## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| BEASLEY MEDIA GROUP, LLC ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| DAVID GREENE AND ) | |
| SPORTSHUBSTL, LLC ) | |
| ) | |
| Defendants. ) | |
| ) | |

## VERIFIED COMPLAINT

Plaintiff Beasley Media Group ("Beasley Media"), by its undersigned counsel, brings this Verified Complaint against David Greene ("Greene") and SportsHubSTL, LLC ("Sports Hub STL") (collectively, "Defendants"), and states as follows:

## PRELIMINARY STATEMENT

1.      Beasley Media brings this action against Defendants for their wrongful and unauthorized use of a protected name and trademarks of Beasley Media's 98.5 The Sports Hub by a competitor known as "Sports Hub STL."

2.      Beasley Media operates more than 50 radio stations around the country, including Boston radio station WBZ-FM/98.5, better known as 98.5 The Sports Hub.

3.      In addition to being named the top sports radio station in the country for numerous consecutive years, The Sports Hub is a full digital sports network including game broadcasts for major Boston/New England professional sports teams, offering audio, video, and written content through its website, YouTube, podcast outlets, and social media.

4.      Beasley Media's mark, The Sports Hub, has been in use since at least August 2009 and was registered with the U.S. Patent and Trademark Office on February 25, 2020.

5.     Beasley Media's logo for The Sports Hub has been in use since at least November 2011 and was registered with the U.S. Patent and Trademark Office on September 10, 2024.

6.     In February 2025, Defendants launched the digital sports network "Sports Hub STL," which is intentionally similar to the name and style of Beasley Media's 98.5 The Sports Hub and offers virtually identical services, but for St. Louis area sports teams.  Defendants also created a logo that imitates that of Beasley Media's 98.5 The Sports Hub.

7.     Using their new and confusingly similar entity, Defendants launched a website, www.sportshubstl.com, which copies many aspects of Beasley Media's own website, www.985thesportshub.com, including use of a similarly confusing logo and design.

8.     Defendants were aware of Plaintiff's marks prior to starting their competing digital sports network, even writing articles about The Sports Hub's success as a top sports radio station in the United States.  Defendants willfully and knowingly infringed and diluted Plaintiff's marks by launching Sports Hub STL.

9.     Beasley Media sent a demand to Defendants to cease and desist from their unlawful activities, including from improperly using Beasley Media's registered trademarks.  Despite having prior knowledge of Beasley Media's marks, and despite being asked to stop, Defendants have refused to comply.   Instead, Defendants continue to trade off of Beasley Media's goodwill and national brand through their operation of a confusingly similar, competing digital sports network.

10.     Defendants' unlawful conduct has already caused and has the potential to cause tremendous damage to Beasley Media.  Beasley Media seeks injunctive relief as well as appropriate monetary damages against Defendants.

## THE PARTIES, JURISDICTION, AND VENUE

11.     Beasley Media is a Delaware limited liability company with its principal place of business in Naples, Florida.

12.     Defendant Greene is a citizen of the State of Missouri and, upon information and belief, currently resides at 255 Lindeman Road, St. Louis, Missouri 63122.

13.     Defendant SportsHubSTL, LLC is a Missouri limited liability company, formed in January 2025, with its principal place of business at 10316 Manchester Road, Saint Louis, Missouri 63122.  Defendant SportsHubSTL, LLC may be served through its registered agent, Defendant David Greene, at 55 Lindeman Road, Saint Louis, MO 63122.

14.     This Court has jurisdiction over this entire action pursuant to 28 U.S.C. § 1331 because Plaintiff is asserting claims under the Lanham Act.

15.     This Court has subject matter jurisdiction over the state claims asserted pursuant to 28 U.S.C. § 1367.

16.     This Court has general personal jurisdiction over Defendants because they are residents of Missouri and conduct business within this jurisdiction.

17.     This Court has specific personal jurisdiction over Defendants because they intentionally and purposefully committed numerous illegal and wrongful acts against Plaintiff in this judicial district.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants reside in this judicial district and a substantial part of the events giving rise to the claims herein occurred in this district.

## FACTS

### Plaintiff Beasley Media

19.     Established in 1961, Beasley Media Group, LLC is a multiplatform media company providing advertising and digital marketing solutions across the United States.  Beasley Media also offers capabilities in audio technology, streaming audio, podcasting, ecommerce, and events.

20.     Beasley Media's platforms reach over 30 million unique consumers weekly between its over-the-air and online channels, providing diverse audio channels and offering content for a variety of genres such as sports, talk, music, and Spanish language stations.

21.     The radio and audio industry is highly competitive, with numerous entities seeking to enter the market and acquire listeners and advertisers.

22.     Beasley Media has developed a reputation for high-quality radio and audio content, driven by its experienced and well-known personalities. Beasley Media's relationships with its listeners and advertisers are based on confidence in Beasley Media's radio hosts and a recognition of Beasley Media as a consistent provider of such hosts.

23.     Beasley Media's efforts and success in the industry have allowed Beasley Media to develop goodwill and relationships with listeners and advertisers throughout the United States.

### 98.5 The Sports Hub

24.     Since December 20, 2017, Beasley Media has owned WBZ-FM/98.5, a commercial sports radio station licensed to Boston, Massachusetts, and serving the greater Boston area, much of surrounding New England and is streamed throughout the country.

25.     98.5 The Sports Hub is the Boston affiliate for Fox Sports Radio and is the flagship station for the New England Patriots, Boston Bruins, Boston Celtics, and New England Revolution Radio Networks.

26.     The concept for 98.5 The Sports Hub came into existence in mid-2009 when then-current owner CBS Radio announced it was changing the station's format to sports radio under the 98.5 The Sports Hub branding.

27.     Since at least August 2009, "The Sports Hub" has become synonymous with 98.5 The Sports Hub and the provision of ongoing programs in the field of sports delivered by radio, satellite, the internet, mobile apps, on YouTube, and on TV through a partnership with NBC, including ongoing original podcasts, journals, and blogs in the field of sports.

28.     Beasley Media registered the trademark "The Sports Hub" with the United States Patent and Trademark Office on February 25, 2020. (A true and correct copy of the Registration is attached hereto as "Exhibit 1".)

29.     Beasley Media's mark, the term "The Sports Hub," has been in use in commerce since as early as August 13, 2009.

30.     Additionally, Beasley Media's registration of its "The Sports Hub" mark is incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus serves as conclusive evidence of its validity and of Beasley Media's exclusive right to use the trademark in commerce pursuant to 15 U.S.C.§ 1115(b).

31.      Beasley Media also registered a trademark logo with the United States Patent and Trademark Office on September 10, 2024, which consists of the wording "Boston's Home for Sports" in dark blue letters drawn above the number 98.5, drawn in red with a white outline against a dark blue background with a gray outline centered within a ring design shaded gray and white. The words "The Sports Hub" are drawn on the front of the ring in dark blue letters outlined in white. (A true and correct copy of proof of registration is attached as "Exhibit 2".)



32.     The registration indicates that the colors dark blue, gray, white, and red are claimed as a feature of the mark.

33.     Beasley Media's mark logo has been in use in commerce since as early as November 17, 2011.

34.     The brand of The Sports Hub is well-known nationally and has received numerous awards and accolades over the past 15 years.

35.     Barrett Media, a full-service publishing and consulting company, providing daily coverage of radio, television and digital brands in the sports, news and music media industries, has named The Sports Hub the #1 major market sports station in the United States for seven years in a row and for eight out of the last nine years.

36.     The Sports Hub personalities have won top awards from Barrett Media repeatedly over the past several years.  For example, in 2024, The Sports Hub's shows were ranked #3 AM, #1 midday and afternoons, and #2 program director.

37.     In 2023, BIA Advisory Services ranked The Sports Hub the #5 highest-billing radio station by revenue in the United States.  In 2022, The Sports Hub was the #4 highest-billing radio station.  The 2024 list has not yet been released.

38.     In 2024, The Sports Hub generated over $46,000,000 in total revenues.

39.     The Sports Hub has won four prestigious Marconi awards for sports station of the year over the past 15 years, and The Sports Hub morning and afternoon teams have also won a

Marconi each during their tenure. The Marconi Radio Awards are presented annually by the National Association of Broadcasters (NAB) to the top radio stations and on-air personalities in the United States.

40.     While 98.5 The Sports Hub is a Boston/New England based station, The Sports Hub has a large reach around the United States and in the St. Louis market.

41.     An analysis of metrics for the designated market area of St. Louis indicated that during the past year: (1) over 8,100 unique devices streamed The Sports Hub content in the St. Louis market; (2) between 50,000 – 55,000 podcasts from The Sports Hub were downloaded in the St. Louis market; (3) over 2,600 YouTube views from The Sports Hub were viewed in the St. Louis market; and (4) there were over 121,500 users to The Sports Hub website from the St. Louis market.

42.     The Sports Hub also boasts over 450,000 followers on its social media platforms Facebook, InstaGram, X (formerly known as Twitter), and TikTok.

43.     Through Beasley Media's long and exclusive use of its marks in The Sports Hub, as well as its nationwide advertising and promotion of The Sports Hub, a loyal customer base throughout the United States, and its national reputation for high quality sports content, Beasley Media's marks in The Sports Hub have become widely recognized by the general consuming public of the United States as a digital sports network.

44.     The widespread recognition for The Sports Hub among the public can also be seen through Internet search results.  For example, a search on Google for the term "the sports hub" yields top hits all related to 98.5 The Sports Hub.

45.     Additionally, a search on Wikipedia for "sports hub" includes 98.5 The Sports Hub among four total results, the other three of which refer to sports venues in Singapore and India:



### David Greene and SportsHubSTL

46.     Defendant David Greene is the Chief Media Officer for Barrett Media.

47.     His background includes over 25 years in the media and content creation industry, with a major focus on sports media.

48.     On August 22, 2024, Defendant Greene published an article on Barrett Media's website celebrating the 98.5 The Sports Hub's 15 years of success, stating that "Beasley Media Group's 98.5 The Sports Hub [is] by any measurement one of the top sports radio stations in the country."

49.     Based on this article alone, Defendant Greene was familiar with 98.5 The Sports Hub, including its history, brand, content, and marks.

50.     On January 24, 2025, Defendant Greene created and registered an entity called "SportsHubSTL, LLC" with the Missouri Secretary of State.

51.     On February 10, 2025, Barrett Media published an article online naming 98.5 The Sports Hub the number one major market sports radio station in 2024.  Given his role as Chief

Media Officer, Defendant Greene was no doubt aware of this article and the accolades for The Sports Hub.

52.     Two days later, on February 12, 2025, Barrett Media published an article announcing Defendants' launch of Sports Hub STL, St. Louis' "first dedicated all-digital sports network."

53.     Thus, despite Defendant Greene's awareness of Beasley Media's trademarks in 98.5 The Sports Hub, Defendants willingly and intentionally moved forward with a similar mark.

54.     Defendant Greene serves as President and Director of Sales for Sports Hub STL.

55.     According to Sports Hub STL's press release, "Sports Hub STL will redefine how fans connect with their favorite teams by delivering video, audio, and written content across YouTube, major podcast outlets like Apple and Spotify, social media, SportsHubSTL.com and a dedicated mobile app (expected in Q2 2025)."

56.     In other words, in addition to using The Sports Hub's name for their new company, Defendants created Sports Hub STL to offer virtually identical services as a digital sports network dedicated to St. Louis area sports teams.

57.     Defendants also created a website for the new entity, www.sportshubstl.com, which is nearly identical to Beasley Media's website for 98.5 The Sports Hub, www.98.5thesportshub.com,  in order to further cause confusion among consumers and advertisers and reap the benefits of being associated with the popular 98.5 The Sports Hub brand.

58.     On February 13, 2025, Defendant Greene published his first article on Sports Hub STL's website, officially launching the brand.

59.     Defendants created this knock-off entity to take advantage of the goodwill and success of The Sports Hub brand, which Beasley Media built up through significant time, labor,

and expense, and to reap the economic benefits therefrom or to deceive consumers and/or advertisers into believing that Sports Hub STL was sponsored or in some way affiliated with Beasley Media's 98.5 The Sports Hub.

60.     In using confusingly similar marks for their competing digital sports network, Defendants also intended to take advantage of The Sports Hub's popularity and recognition, including to capitalize on Google search results related to The Sports Hub.

61.     Defendants' website contains the following company logo:



62.     Next to the logo are the words "St. Louis Sports" written in dark blue, and "Anytime Anywhere" written in dark red.



63.     As outlined above, Beasley Media has operated and advertised under the registered The Sports Hub mark and brand name for many years.

64.     Further, Defendants' logo is extremely similar in word, font, style, design, and color to Beasley Media's registered trademark and the logo Beasley Media has used for years:




65.     Both marks contain the colors dark blue, red, and white.  This is true even though the major St. Louis Teams covered by Sports Hub STL all contain gold/yellow, including the St. Louis Cardinals, St. Louis Blues, Missouri Tigers, Kansas City Chiefs, and St. Louis City SC.

66.     Additionally, both marks contain the term "SPORTS HUB" in capital letters, with additional text to reflect the name of the city.

67.     Further, both marks contain a circular design.

68.     Defendants' website also has positioned the teams it covers in circular bubble icons directly to the right of its logo:

       

69.     Beasley Media's 98.5 The Sports Hub website has long positioned its covered teams in the same fashion on its website:



70.     Given the similarities, a consumer or advertiser would easily confuse these marks, and/or confuse Sports Hub STL as being sponsored by or affiliated with Beasley Media's The Sports Hub.

71.     Defendants' website states "Sports Hub STL isn't just a network—it's a home for fans to engage, react, and be a part of the conversation."  This is exactly the brand and concept that Beasley Media built with 98.5 The Sports Hub.

72.     Defendants also created social media accounts to promote and provide services, including Sports Hub STL's Facebook page located at https://www.facebook.com/STLSportsCentral, its X (Twitter) account at @SportsHubSTL, and its Instagram account at @sportshubstl.

73.     Defendant Greene also created a YouTube page for his entity Sports Hub STL, which is located at https://www.youtube.com/@sportshubstlou.

74.     Defendants' YouTube page states that "Sports Hub STL is an innovative digital sports network dedicated to providing real-time, engaging content tailored specifically to St. Louis sports fans."

75.     On February 26, 2025, Beasley Media's legal counsel sent a cease and desist letter to Defendants requesting they discontinue use of the mark The Sports Hub and giving them two weeks to phase out use of the registered marks. (A true and accurate copy of Beasley Media's Cease and Desist Letter to Defendant is attached as "Exhibit 3".)

76.     In response, Defendants' strategy was to delay, repeatedly asking for additional time before finally providing a substantive response to Beasley Media's demands through counsel over one month later on March 28, 2025.

77.     Despite receiving Beasley Media's letters, and despite their prior knowledge of Beasley Media's trademarks, Defendants have refused to comply with Beasley Media's demands or otherwise cease their infringement and dilution of its marks.

78.     Defendants' unlawful conduct and continuing disregard for Beasley Media's rights has been intentional, willful, and malicious.

79.     Upon information and belief, Defendants' unlawful conduct is intended to capitalize off the goodwill of Beasley Media's mark and brand reputation in the marketplace, which Beasley Media built through significant time, labor, and expense.  Defendants intend to use Beasley Media's valuable goodwill to reap economic benefits by deceiving consumers into believing that Defendants' digital sports network is somehow associated with Beasley Media and The Sports Hub.

80.     Defendants' conduct also impairs the distinctive nature of Beasley Media's trademarks in The Sports Hub.  By establishing a digital sports network offering virtually identical services as Beasley Media's The Sports Hub, adopting the term "Sports Hub" in its name and a substantially similar logo, advertising in the same space to the same category of consumer, and providing content on the same platforms, Defendants conduct is likely to cause confusion in the marketplace and dilution of the distinctiveness of Beasley Media's marks.

81.     The harm suffered by Beasley Media as a result of Defendants' conduct and their continuing intent to profit off Beasley's marks is and will be irreparable in nature, and incapable of being measured solely in terms of monetary damages, thereby leaving no adequate remedy at law for said harm to Beasley Media.

82.     Defendants' actions described above have caused and will continue to cause substantial damages to Beasley Media unless enjoined.  Defendants' actions have and will cause Beasley Media damages so as to make Defendants liable for Beasley Media's actual losses, treble damages, attorney's fees, and costs.

83.     Because Defendants do not intend to cease their use of Beasley Media's trademarks, Beasley Media has no alternative remedy other than to request this Court to enforce its rights and enjoin Defendants from continuing to use their marks through the operation of Sports Hub STL.

## COUNT I

## TRADEMARK INFRINGEMENT UNDER
## § 32 OF THE LANHAM ACT, 15 U.S.C. § 1114(1)

84.     Beasley Media alleges and incorporates by reference the preceding paragraphs as if set forth in full herein.

85.     Beasley Media has registered the following trademark, which is distinctive and used in commerce on their website, in marketing materials, and in advertising, with the United States Patent and Trademark Office:



86.     Beasley Media has also registered the trademark "The Sports Hub," which is distinctive and used in commerce on their website, in marketing materials, and in advertising, with the United States Patent and Trademark Office.

87.     Beasley Media is the exclusive owner of the trademarks and has used the marks continuously and extensively in relation to their goods and services.

88.     Despite having prior knowledge of Beasley Media's marks, Defendants knowingly and intentionally moved forward with a similar mark and logo in Sports Hub STL.

89.     Defendants offer the same services that Beasley Media's The Sports Hub provides to its customers as a digital sports network, including video, audio, and written content such as podcast and blogs on its website, podcast outlets, social media, YouTube, and (soon) a mobile app.

90.     Defendants adopted Beasley Media's mark "The Sports Hub" in naming Sports Hub STL, and they operate their company with that name in commerce, including on their website, social media, and YouTube.

91.     Defendants also use the following logo in commerce and on their website, which is substantially similar to Beasley Media's valid and legally enforceable trademark:



92.     Beasley Media registered its marks and began using them in commerce years before Defendants used this name and logo for their new company.

93.     Because Sports Hub STL is using the term "Sports Hub" from Beasley Media's trademark, Sports Hub STL's logo is nearly identical to Beasley Media's trademark, and Defendants are using the name and logo to advertise the same services provided by Beasley Media's The Sports Hub, Sports Hub STL is likely to cause confusion among consumers and advertisers as to the source of the parties' respective services.

94.     Defendant Greene had extensive knowledge of Beasley Media's 98.5 The Sports Hub marks and its history and success in the sports world, as evidenced by the August 2024 article he wrote on the 15-year anniversary of 98.5 The Sports Hub and the numerous years of accolades for top sports radio station awarded by Barrett Media, for which Defendant Green serves as Chief Media Officer.

95.     Defendants were well aware of the prominence and success of The Sports Hub and decided to use Beasley Media's success and goodwill to brand their own digital sports network, Sports Hub STL, with the same name and brand logo.

96.     Defendants willfully and maliciously used a name and logo, which are substantially similar to Beasley Media's trademarks, to confuse customers or advertisers into believing that Sports Hub STL was associated with Beasley Media and 98.5 The Sports Hub.

97.     Defendants used their mark, based off Beasley Media's registered marks, in commerce without the consent of Beasley Media.

98.     Defendants' unauthorized use of the mark is likely to cause confusion, mistake, or deceive.

99.     Beasley Media's marks are both conceptually and commercially strong.

100.    Prior to the development of the 98.5 The Sports Hub concept, there were few, if any, radio stations bringing radio, sports, podcasts, and personalities together into one central "hub" in the way that 98.5 The Sports Hub did.  Its success was premised on this conceptually unique idea, one which immediately gained traction and led to the success and growth of the 98.5 The Sports Hub brand.

101.    The 98.5 The Sports Hub mark is a well-known and established brand, with consumers, visitors, and listeners on multiple outlets throughout the United States. The "The Sports Hub" brand developed under Beasley Media has gained a strong secondary meaning, which is why Defendants have sought to utilize the mark for their own personal gain.

102.    As evidenced by Defendant Greene's coverage of 98.5 The Sports Hub prior to his creation of Sports Hub STL, Defendants intended to use Beasley Media's mark to create a similar mark to capitalize on the goodwill that Beasley Media has established over time.

103.    Given their knowledge of the 98.5 The Sports Hub marks, Defendants intended to infringe on Beasley Media's marks by passing off Sports Hub STL's content and services as affiliated with that of the 98.5 The Sports Hub mark owner.

104.    Defendants' mark is very similar to Beasley Group's marks, including using the words "Sports Hub" as the main focus of the mark(s), the same colors, similar circular design, and the association of the "hub" as being the primary source of sports content for their market.

105.    Visually, the two marks are likely to lead consumers to view an association between Sports Hub STL and 98.5 The Sports Hub, especially since they are both digital sports networks and the products and services Defendants offer through the use of their mark is identical to that of Beasley Media.

106.    Beasley Media and Defendants are both media companies attempting to capture the same audience by advertising and selling sports coverage content to sports enthusiasts everywhere. They compete with each other on a daily basis in the same St. Louis market and elsewhere.

107.    Beasley Media and Defendants both rely extensively on social media to advertise their services.

108.    Both parties offer competing, and in many cases, similar podcasts, event coverage, and personalities.

109.    Consumers looking for sports coverage content are unlikely to exercise any major degree of care when choosing where to receive free sports coverage online, or in determining the ownership, affiliation, or source of sports content.

110.    Nevertheless, consumer recognition of a mark or logo or brand, such as "The Sports Hub," is a driving factor in bringing consumers to a particular website if they have associated high-quality content with that mark and brand in the past.

111.    Because consumers are unlikely to take care to distinguish whether Sports Hub STL is in fact part of Beasley Media or 98.5 The Sports Hub, the likelihood of confusion will not be reduced.

112.    Defendants' acts and conduct complained of herein constitute infringement of Beasley Media's trademarks in violation of 15 U.S.C. § 1114.

113.    As a direct and proximate result of Defendants' trademark infringement, Beasley Media has suffered injury to its business reputation, goodwill, and sales.

114.    Unless enjoined by the Court, Defendants will continue to cause irreparable harm to Beasley Media for which there is no adequate remedy at law.

115.    As Defendants have willfully committed trademark infringement and have caused and will continue causing substantial injury to Beasley Media, Beasley Media is entitled to recover at least any profits by Defendants, monetary damages, treble damages, attorney's fees, and injunctive relief under 15 U.S.C. §§ 1114(1), 1116, and 1117.

## COUNT II

## TRADEMARK INFRINGEMENT UNDER
## § 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

116.    Beasley Media alleges and incorporates by reference the preceding paragraphs as if set forth in full herein.

117.    Through their unlawful activities outlined herein, Defendants have violated Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). Defendants' use of Sports Hub STL's mark is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Beasley Media's The Sports Hub and as to the origin, sponsorship, and/or approval of any of Defendants' goods or services, at least by creating the false and misleading

impression that any of Defendants' goods or services are produced by, authorized by, or otherwise associated with Beasley Media.

118.    The Beasley Media trademarks are entitled to protection under the Lanham Act. The Beasley Media marks are inherently distinctive. Beasley Media has extensively and continuously promoted and used its trademarks throughout the United States, including in Missouri.  Through that extensive and continuous use, the Beasley Media trademarks have become well-known indicators of the origin and quality of the Beasley Media's goods and services. The Beasley Media trademarks have also acquired substantial secondary meaning in the marketplace. Moreover, the Beasley Media trademarks acquired this secondary meaning before Defendants commenced their unlawful use the Beasley Media's mark and logo in connection with their goods and services.

119.    Defendants' use of the Sports Hub STL mark and logo in connection with their goods and services and commercial activities has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Beasley Media for which Beasley Media has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Beasley Media's trademarks, Beasley Media's goods and services, and 98.5 The Sports Hub.

120.    On information and belief, Defendants' unlawful conduct has been intentional, willful, and malicious, and is evidenced at least by Defendants' knowledge of Beasley Media and 98.5 The Sports Hub and its rights, and by Defendants' ongoing and continuing disregard for Beasley Media's rights.

121.    Beasley Media is entitled to injunctive relief, and Beasley Media is entitled to recover at least any profits by Defendants, monetary damages, treble damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

<u>**COUNT III**</u>

<u>**TRADEMARK INFRINGEMENT**</u>
<u>**UNDER MISSOURI COMMON LAW**</u>

122.    Beasley Media alleges and incorporates by reference the preceding paragraphs as if set forth in full herein.

123.    Beasley Media owns the well-known and distinctive "The Sports Hub" mark and the accompanying 98.5 The Sports Hub logo mark. Beasley Media has used these marks continuously in commerce—in the state of Missouri and elsewhere—since at least 2009 and 2011, respectively. Beasley Media has owned the U.S Registration No. 5,994,548 and No. 7,499,555 of the marks since 2020 and 2024, respectively.

124.    Beasley Media's trademarks in The Sports Hub are entitled to protection under the common law.

125.    Beasley Media's trademarks in The Sports Hub have acquired significant secondary meaning in the marketplace, including before Defendants launched Sports Hub STL.

126.    Defendants use the confusingly similar marks in connection with their own sports content and services offered in the same media broadcasting and digital sports network field that is similar to or related to the content and services offered by Beasley Media under their registered marks.

127.    Defendants' use of the marks in connection with Sports Hub STL's sports content and services is likely to cause confusion, mistake, or deception of the public as to the source or sponsorship of the services, or as to an affiliation between the parties. The relevant public is likely

to confuse Defendants' services offered under their mark with those offered by Beasley Media under its registered marks, thereby resulting in damage and injury to Beasley Media.

128.     These acts constitute trademark infringement in violation of the common law of the state of Missouri and in violation of Mo. Rev. Stat. § 417.056.

129.     Because of Defendants' unlawful acts, Beasley Media has suffered and will continue to suffer damage to its business reputation and goodwill, for which Beasley Media is entitled to relief.

130.     Unless enjoined by the Court, Defendants will continue to cause irreparable harm to Beasley Media for which there is no adequate remedy at law and for which Beasley Media is entitled to injunctive relief.

131.     Beasley Media is also entitled to recovery of at least any profits by Defendants, monetary damages, punitive damages, and attorney's fees.

### COUNT IV

### TRADEMARK DILUTION UNDER
### § 43(c) OF THE LANHAM ACT, 15 U.S.C. § 1125(c)

132.     Beasley Media alleges and incorporates by reference the preceding paragraphs as if set forth in full herein.

133.     Since 2009, the "The Sports Hub" mark has been exclusively and continuously promoted and used in commerce by 98.5 The Sports Hub, owned and operated by Beasley Media. The Sports Hub was a well-known symbol of Beasley Media's business, products, and services nationwide long before Defendants began using the infringing name in February of 2025.

134.     Beasley Media's trademarks in The Sports Hub have acquired significant secondary meaning in the marketplace, including before Defendants launched Sports Hub STL.

135.    Additionally, Beasley Media's registered trademark logo for 98.5 The Sports Hub has been exclusively and continuously promoted and used by Beasley Media in commerce since 2011.  Beasley Media's registered trademarks for 98.5 The Sports Hub was a well-known symbol of Beasley Media's business, products, and services nationwide (including among Defendants) before Defendants began using the infringing mark in February of 2025.

136.    Beasley Media's trademarks in The Sports Hub are inherently distinctive, and they have acquired distinctiveness through Beasley Media's extensive and continuous promotion and use of The Sports Hub's trademarks the United States.

137.    Defendants' use of Beasley Media's trademarks in commerce without consent has caused and will continue to cause dilution of the distinctive quality of Beasley Media's famous marks, among other things, lessening the ability of these trademarks to identify and distinguish the goods and services provided by Beasley Media.

138.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Beasley Media's trademarks and to cause dilution of the marks to the great and irreparable injury of Beasley Media.

139.     As a direct and proximate result of Defendants' wrongful conduct, Defendants have caused and will continue causing substantial injury to Beasley Media. Thus, Beasley Media is entitled to recover Defendants' profits, actual damages, costs, attorney's fees, and injunctive relief under 15 U.S.C. §§ 1125(c), 1116, and 1117.

## COUNT V

## TRADEMARK DILUTION UNDER THE
## MISSOURI ANTI-DILUTION ACT, MO. ANN. STAT. § 417.061

140.    Beasley Media alleges and incorporates by reference the preceding paragraphs as if set forth in full herein.

141.    Beasley Media is the owner of both the "The Sports Hub" mark and the associated 98.5 The Sports Hub logo mark, and these marks have been used extensively and continuously since 2009 and 2011, respectively, including in the state of Missouri. The marks have thus become a distinctive and strong identifier of Beasley Media and its The Sports Hub brand.

142.    Beasley Media's trademarks in The Sports Hub are valid at common law and entitled to protection under Missouri law.

143.    Beasley Media's trademarks in The Sports Hub have acquired significant secondary meaning in the marketplace, including before Defendants launched Sports Hub STL.

144.    Defendants' use of Beasley Media's trademarks in commerce has caused and will continue to cause dilution of the distinctive quality of Beasley Media's famous marks, among other things, lessening the ability of these trademarks to identify and distinguish the goods and services provided by Beasley Media.

145.    Defendants' use of the Beasley Media's marks in connection with its own sports content and services constitutes trademark dilution in violation of Mo. Rev. Stat § 417.061(1).

146.    As a result of Defendants' acts of trademark dilution, Beasley Media has been damaged by Defendants infringement and continues to suffer immediate and irreparable damage as long as Defendants' activity continues.

147.    As a result of Defendants' acts of trademark dilution, Beasley Media is entitled to injunctive relief against Defendants, in addition to profits by Defendants, monetary damages, punitive damages, and attorney's fees.

## COUNT VI

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER § 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

148.   Beasley Media alleges and incorporates by reference the preceding paragraphs as if set forth in full herein.

149.   Defendants' unlawful activities outlined herein violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unfair competition and false designation of origin, at least because Defendants have obtained an unfair advantage as compared to Beasley Media through Defendants' use of Sports Hub STL's mark and logo and because such use is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of any of Defendants' goods or services, at least by creating the false and misleading impression that any or Defendants' goods or services are produced by, authorized by, or otherwise associated with Beasley Media.

150.   Beasley Media's trademarks are entitled to protection under the Lanham Act. Beasley Media has extensively and continuously promoted and used its trademarks in the United States.  Through that extensive and continuous use, Beasley Media's trademarks have become well-known indicators of the origin and quality of Beasley Media and 98.5 The Sports Hub's goods and services. Beasley Media and 98.5 The Sports Hub's trademarks are also inherently distinctive. Moreover, Beasley Media's rights in their trademarks predate Defendants' unlawful use of the Sports Hub STL mark and logo in connection with their goods and services.

151.   Defendants' use of the Sports Hub STL mark and logo in connection with their goods and services and commercial activities has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Beasley Media for which Beasley Media has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Beasley Media's trademarks, Beasley Media's goods and services, and the 98.5 The Sports Hub brand.

152.    On information and belief, Defendants' unlawful conduct has been intentional, willful, and malicious, and is evidenced at least by Defendants' knowledge of Beasley Media and its rights, and by Defendants' ongoing and continuing disregard for Beasley Media's rights.

153.    Beasley Media is entitled to injunctive relief, and Beasley Media is also entitled to recover at least any profits by Defendants, Beasley Media's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

<u>COUNT VII</u>

<u>UNFAIR COMPETITION UNDER MISSOURI COMMON LAW</u>

154.    Beasley Media alleges and incorporates by reference the preceding paragraphs as if set forth in full herein.

155.    Defendants' activities described above constitute common law unfair competition, including by imitating Beasley Media's trademarks in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of any of Defendants' goods or services, and by creating the false and misleading impression that any of Defendants goods or services are produced by, authorized by, or otherwise associated with Beasley Media.

156.    Beasley Media's trademarks are entitled to protection under the common law. Beasley Media has extensively and continuously promoted and used its trademarks in the United States and the State of Missouri. Through that extensive and continuous use, Beasley Media's trademarks have become well-known indicators of the origin and quality of Beasley Media and 98.5 The Sports Hub's goods and services. The Beasley Media trademarks are also inherently distinctive. Moreover, Beasley Media's rights in their trademarks predate Defendants' unlawful use of the Sports Hub STL mark and logo in connection with their goods and services.

157. Defendants' use of the Sports Hub STL mark and logo has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Beasley Media for which Beasley Media has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Beasley Media trademarks, Beasley Media's goods and services, and the 98.5 The Sports Hub brand.

158. On information and belief, Defendants' unlawful conduct has been intentional, willful, and malicious, and is evidenced at least by Defendants' knowledge Beasley Media and its rights, and by Defendants' ongoing and continuing disregard for Beasley Media's rights.

159. Beasley Media is entitled to injunctive relief, and Beasley Media is also entitled to recover at least Beasley Media's damages, any profits by Defendants, punitive damages, costs, and reasonable attorney fees.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, in addition to the relief described above, respectfully prays for the following relief against Defendants:

A. A judgment that Defendants have engaged in trademark infringement in violation of 15 U.S.C. § 1114(1), 15 U.S.C. § 1125(a), and the common law of the state of Missouri and Mo. Rev. Stat. § 417.056;

B. A judgment that Defendants have engaged in trademark dilution in violation of 15 U.S.C. § 1125(c) and Mo. Rev. Stat. § 417.061(1);

C. A judgment that Defendants have engaged in unfair competition in violation of 15 U.S.C. § 1125(a) and the common law of the state of Missouri;

D. **Injunctive relief regarding Beasley Media's trademarks**: That Plaintiff be granted temporary, preliminary, and permanent injunctive relief requiring Defendants (and their

officers, agents, servants, employees, and attorneys, as well as those persons in active concert or participation with him) to: (i) cease using Beasley Media's trademarks, including but not limited to Beasley Media's registered trademark, The Sports Hub, and Beasley Media's 98.5 The Sports Hub logo, or any other similar mark that could be confused, mistaken, or believed to be affiliated with Beasley Media's registered and common law trademarks; and (ii) remove Defendant SportsHubSTL, LLC's website, and YouTube, Instagram, Facebook pages, and all other social media and internet posts;

E.      **Profits and Actual Damages:**  That judgment be entered for Beasley Media and against Defendants for an award of any profits by Defendants and Plaintiff's actual damages and interest as may be caused to Beasley Media by the conduct of Defendants complained of herein.

F.      **Punitive Damages:**  That judgment be entered for Beasley Media and against Defendants for punitive damages.

G.      **Treble Damages:**  That judgment be entered for Beasley Media and against Defendants, for treble damages for Defendants' violations of the Lanham Act under 15 U.S.C. § 1117.

H.      **Attorneys' Fees:**  That judgment be entered for Beasley Media and against Defendants for reasonable attorneys' fees incurred by Beasley Media in prosecuting this action.

I.      **Costs:**  That Beasley Media be awarded its costs in this action; and

J.      That Beasley Media be awarded such other and further relief as this Court deems just and equitable.

K.      Beasley Media requests a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Date: April 9, 2025

Respectfully submitted,

*/s/Laura Bailey Brown*
Laura Bailey Brown, Mo. Bar 62732
**FISHER PHILLIPS LLP**
4622 Pennsylvania Ave, Suite 910
Kansas City, Missouri 64112
Tel: (816) 842-8767
lkbrown@fisherphillips.com

John W. Stapleton *(pro hac application forthcoming)*
368790(GA)
Evan A. Alberhasky *(pro hac application forthcoming)*
193972(GA)
**FISHER PHILLIPS LLP**
1230 Peachtree Street, NE, Suite 3300
Atlanta, Georgia 30309
Tel: (404) 231-1400
jstapleton@fisherphillips.com
ealberhasky@fisherphillips.com

*Attorneys for Beasley Media*

## <u>VERIFICATION</u>

I, Mary Menna, verify under penalty of perjury under the laws of the United States of America that the facts contained in the foregoing Verified Complaint are true and correct to the best of my personal knowledge and belief.

By: _____
    Mary Menna

Dated: April 7, 2025.